ELMARINA, INC., Plaintiff,

v.

COMEXAS, N.V., Defendant.

KONINKLIJKE BUNGE, B.V., et al., Plaintiff,

v.

CIA DE NAVEGACAO LLOYD BRASILEIRO, Defendant,

v.

The SS MARINA L, her engines, boilers, etc, and Elmarina Inc., Third-party Defendant.

No. 86 Civ 0249 (JMW).

United States District Court, S.D. New York.

Feb. 18, 1988.

George B. Freehill, Freehill, Hogan & Mahar, New York City, for Elmarina, Inc.

David L. Mazaroli, Yorkston W. Grist, P.C., New York City, for Comexas, N.V.

## MEMORANDUM AND ORDER

WALKER, District Judge:

The disputes in this consolidated case arise out of the grounding of the *Marina L* ("Vessel") off the coast of Paranagua, Brazil. Elmarina Inc. ("Elmarina"), the owner of the Vessel, and Lloyd Brasileiro ("Lloyd"), time charterer of the Vessel, have filed a motion with this Court to consolidate certain arbitrations. Comexas, N.V. ("Comexas"), cargo insurer, and Koninklijke Bunge ("Bunge"), cargo owner, oppose the motion.[1] For the reasons stated herein, the motion is granted.

## FACTS

In August 1985, Elmarina and Comexas executed a bill of lading ("Bill of Lading") for the shipment of soybean meal pellets from Paranagua to Ghent, Belgium. The Bill of Lading provides that "[a]ll disputes arising out of this Bill of Lading shall be arbitrated at London." With respect to the same shipment of cargo, Bunge and Lloyd entered into a charter party which provides for arbitration of disputes in New York. Lastly, the time charter between Elmarina and Lloyd contains a clause for arbitration of disputes in London.

Shortly after the Vessel left Paranagua on August 25, 1985, it grounded. To save the cargo on board, Elmarina and Comexas entered into a salvage agreement which provides, *inter alia*, that the cargo be removed from the boat and brought back to port, with the parties sharing the associated costs in fixed percentages. Although Comexas paid the fees it owed Elmarina while the cargo was being removed from the Vessel, it refused to make any payments once the entire cargo of soybean pellets had been salved. Consequently, Elmarina commenced an action in this Court. In turn, Comexas exercised its rights under the Bill of Lading to commence arbitration in London. The Court, in an order dated October 15, 1986, stayed all proceedings until the completion of the London arbitration.

In September 1986, Bunge commenced an action in this district, but assigned to another judge, also relating to the grounding of the Vessel, alleging that Lloyd unreasonably failed to fulfill certain obligations it owed Bunge. In this second case, Bunge is seeking the costs of salving the cargo and chartering another vessel to carry the soybean pellets on to Ghent. After answering the complaint, Lloyd filed a third-party complaint against Elmarina for indemnity of any possible liability to Bunge. Finally, Elmarina filed a counterclaim against Bunge consisting of the complaint in the first action. Upon the agreement of the parties, the second case was reassigned to me, and in September 1987, the two cases were consolidated.

Elmarina, with the support of Lloyd, has now moved the Court to consolidate the arbitrations between Bunge and Lloyd, on the one hand, and Lloyd and Elmarina, on the other, in New York. Although the agreement between Elmarina and Lloyd provides for arbitration in London, those parties have indicated that if the Court orders the arbitrations consolidated, they will modify the agreement to provide for arbitration in New York. Elmarina and Lloyd concede, however, that even if the Court orders the arbitrations consolidated, the Court is without power to stay the arbitration currently in progress in London.

Comexas/Bunge opposes the motion to consolidate the arbitrations. It contends that the issues to be resolved in the two disputes are different; thus, any consolidation would not be economical or result in a

---

1. Together Bunge and Comexas represent all the cargo interests relevant in this dispute. Because they are represented by the same attorney and have taken the same position in this motion, the two parties, when appropriate, will be referred to as "Comexas/Bunge."

savings of judicial resources. Co-mexas/Bunge further argues that Elmarina is merely attempting to circumvent the Court's order staying the first suit while the London arbitration proceeds. Elmarina and Lloyd counter that consolidation is necessary because the two arbitrations involve the same and only issue at stake, the seaworthiness of the Vessel. Moreover, they argue that their interests are being prejudiced by the slow pace of the London arbitration.

## DISCUSSION

■ There is currently a dispute within the Southern District whether a court can consolidate arbitrations. Nevertheless, the Second Circuit has not reversed its holding in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 974 (2d Cir.1975), that a district court does have the power to consolidate arbitrations in the appropriate circumstances. In that case, the Second Circuit ordered consolidation concluding that there existed "common questions of law and fact ... [and the] danger of conflicting findings." The court based its decision on the Federal Rules and the Arbitration Act:

> We agree that Fed.R.Civ.P., Rules 42(a) and 81(a)(3), are applicable. Moreover, we think the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings in proper cases, such as the one before us.

*Id.* at 975.

The source of the confusion in this District is the Ninth Circuit's decision in *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635 (1984), and the Supreme Court's holding in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). When the Ninth Circuit addressed the issue of the power of a district court to consolidate arbitrations, it rejected *Nereus* and concluded that there was no authority in either the Federal Rules or the Arbitration Act to consolidate arbitrations.

In *Dean Witter*, the Supreme Court held that a district court could not refuse to order arbitration of pendent state claims to a federal securities action where a valid agreement to arbitrate exists. The district court had concluded that the simultaneous arbitration and litigation concerning the same facts would result in inconsistent results and cause needless duplication and expenditure of scarce resources. The Supreme Court rejected this reasoning holding that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter*, 470 U.S. at 217, 105 S.Ct. at 1241. The Court based its conclusion on the legislative history of the Arbitration Act:

> We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy dispute resolution—must be resolved in favor of the latter in order to realize the intent of the drafters. The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.

*Id.* at 221, 105 S.Ct. at 1242–43.

Although the Supreme Court did not address whether a district court had the requisite power to consolidate arbitrations, Judge Edelstein, based on the reasoning of the Court in *Dean Witter* together with the logic of the Ninth Circuit's decision, concluded that the Second Circuit would reverse its opinion in *Nereus* if faced with the issue. *Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510 (S.D.N.Y.1985). In reviewing cases since *Nereus* was decided, Judge Edelstein believed that the bases of the Second Circuit's decision had been undermined. He held that the legislative intent behind the Arbi-

tration Act was the goal of strictly enforcing arbitration agreements, "not reforming them." *Id.* at 1513. Judge Edelstein also concluded that the Federal Rules were inapplicable to a motion for consolidation of arbitrations. *Id.* at 1513–15. Furthermore, the judge, acting on the assumption that he had the power to consolidate, refused to exercise his discretion holding that "[p]rocedural matters such as this are best suited for resolution by the arbitrator." *Id.* at 1515.

No other court in this district has reached the same conclusion as Judge Edelstein. Although Judge Lowe was sympathetic to the reasoning in *Ore,* she did not resolve the issue but refused to exercise her discretion to consolidate. *In re Reefer Express Lines Pty. Ltd.,* 86 Civ. 4490 (S.D. N.Y.1987) (Mem.Op. and Order May 28, 1987) [Available on WESTLAW, 1987 WL 11685]. Both Judges Goettel and Knapp have rejected *Ore* and concluded that *Nereus* is still good law. In *Sociedad Anonima de Navegacion Petrolera v. Cia. de Petroleos de Chile S.A.,* 634 F.Supp. 805, 809 (S.D.N.Y.1986), Judge Goettel concluded that "the efficient and speedy resolution of disputes was clearly among the desired effects of that legislation [Arbitration Act]." The court also emphasized that *Dean Witter* never addressed the issue of consolidation. *Accord, In re Shoyo Shipping Co., Ltd.,* 1986 A.M.C. 2374 (S.D.N.Y. 1986) [Available on WESTLAW, 1986 WL 11607].

Although the decisions of the Ninth Circuit in *Weyerhaeuser* and Judge Edelstein in *Ore* are compelling, the Court is inclined to agree with Judges Goettel and Knapp that this Court should abide by the Second Circuit's opinion in *Nereus.* In the absence of a new decision by that court on the issue of consolidation, the Court is bound to apply the law of this circuit. The Second Circuit has not addressed the issue since *Nereus* nor has any decision of the circuit indicated that the vitality of *Nereus* is questionable. The Court is not bound by the decision of the Ninth Circuit, and although the *Dean Witter* decision is instructive, it does not reverse *Nereus.* Thus, although the Court finds Judge Edelstein's opinion to be well-reasoned and persuasive, the unambiguous decision of the Second Circuit in *Nereus* must be followed.

Although this Court has the power to consolidate arbitrations, the exercise of that power is discretionary. *Sociedad Anonima,* 634 F.Supp. at 809; *Shoyo Shipping Co., Ltd.,* 1986 A.M.C. 2376–77; *Ore,* 606 F.Supp. at 1515. Several factors have been considered by courts when faced with the decision whether to consolidate arbitrations:

a) "the possibility of conflicting findings, and (2) which parties had access to the relevant information." *In re Marine Trading Ltd.,* 432 F.Supp. 683, 684 (S.D. N.Y.1977);

b) "when the 'interests of justice' so require either because the issues in dispute are substantially the same and/or because a substantial right might be prejudiced if separate arbitration proceedings are conducted." *In re Czarnikow–Rionda Co., Inc.,* 512 F.Supp. 1308, 1309 (S.D. N.Y.1981);

c) "where there are common questions of law or fact and a possibility of conflicting awards or inconsistent results." *Sociedad Anonima de Navegacion Petrolera v. Cia. de Petroleos de Chile S.A.,* 634 F.Supp. 805, 809 (S.D.N.Y. 1986); and

d) "when there exist common questions of law and fact or to avoid undue prejudice, delay or cost." *In re General Navigation Inc.,* 1981 A.M.C. 1781, 1783 (S.D.N.Y.1981).

Consolidation would certainly have been proper at the initiation of these cases. Although there still remain strong reasons why the Court should order consolidation, that issue is now more complicated by the pending arbitration in London. Nevertheless, there are common issues of fact and law in these disputes. No one disagrees that the facts are the same in each action, and at least two of the parties maintain that the legal issues are identical. Moreover, Lloyd contends that Elmarina has control over the pertinent information; therefore, any proceeding involving Lloyd

but not Elmarina would be prejudicial to the former. Furthermore, there exists the possibility of inconsistent results and unnecessary cost.[2] Finally, the relevant arbitration clauses are identical.[3]

The scenario is complicated in this case by the pending arbitration in London. Apparently, very little has occurred in that proceeding.[4] Nevertheless, it is underway and could certainly proceed to completion. Indeed, even if the Court orders consolidation, the London arbitration may not terminate. Thus, there would still be the possibility of inconsistent results. If consolidation is not ordered, the London arbitration would proceed and another arbitration may or may not commence.

On balance, however, consolidation is appropriate. The Court ordered stay was entered in October 1986 before the two actions were consolidated. The Court may never have entered the stay had both actions been pending before me from the beginning. The London arbitration apparently has not progressed at a significant pace nor is there any indication that an acceleration is likely. Furthermore, in its stay order of October 15, 1986, the Court, concerned that Elmarina's rights not be prejudiced, gave that party the option of moving to vacate the stay in six months if the arbitration was not yet completed. Now, over sixteen months later, that arbitration has not been heard and thus is not even close to completion.

There seems to be no reason why all the parties should not be present at the same arbitration. Indeed, significant costs could be avoided and time saved if consolidation is ordered. Moreover, a consolidated panel may decide to handle only one dispute at a time, yet at least all the relevant parties will be represented at the arbitration. Comexas/Bunge's contention that Elmarina and Lloyd are ganging up against it by moving for consolidation rings hollow; like a proceeding in court, arbitration provides significant safeguards against such an eventuality. Furthermore, Comexas/Bunge has failed to allege that it would suffer prejudice by a consolidation. Put simply, Bunge would rather proceed against Elmarina and Lloyd in separate arbitrations.[5] *Cf. Sociedad Anonima*, 634 F.Supp. at 809.

If the Court does not order consolidation, there is the likelihood that arbitration subsequent to the one currently in progress will be necessary. Lloyd is not involved in the London arbitration; therefore, Lloyd will not be bound by its result. While some duplication may result from this order, the Supreme Court in *Dean Witter* held that duplication is sometimes an unavoidable consequence of agreements to arbitrate. Even absent an order of consolidation, there is likely to be separate proceedings in this case as a result of all the arbitration clauses. Hopefully, this order will motivate the parties to agree to abandon the London arbitration and proceed solely in New York where a complete disposition of all claims may take place in a single proceeding. Such an agreement will avoid the possibility of inconsistent results and save money for all parties involved.

Accordingly, the stay ordered on October 15, 1986, is lifted and the arbitrations between Elmarina and Lloyd, and Bunge and Lloyd are hereby consolidated.[6] The Court's decision is conditioned upon the filing within twenty (20) days of a stipulation by Elmarina and Lloyd that the arbitration clause of their charter party is identical to that in the charter party between

---

2. Of course, given the nature of a motion to consolidate, this last factor will almost always exist and augur in favor of consolidation.

3. It is unclear from the motion papers whether Elmarina and Lloyd have already modified the arbitration clause of the charter party or they are awaiting an order of consolidation from the Court. Regardless, the arbitration clauses are or will be identical. *Infra* p. 392.

4. Elmarina contends that nothing has occurred in London other than certain preliminary mat-

ters. The arbitration was put on hold pending the resolution of the motion now before the Court. Transcript of Argument on January 22, 1988, p. 13.

5. Transcript of Argument, p. 24.

6. Bunge has moved to dismiss Elmarina's counterclaim in the second action. This motion can best be resolved by the arbitration panel.

Lloyd and Bunge. The parties are left to decide for themselves the appropriate panel of arbitrators. If the parties cannot reach an agreement on this matter within twenty (20) days, the Court will entertain an appropriate application from any party.

SO ORDERED.